# *Valli Kane & Vagnini*
### *Attorneys at Law*

---

600 Old Country Road                                Tel: 516-203-7180
St. 519                                             Fax: 516-706-0248
Garden City, New York 11530                         www.vkvlawyers.com

November 26, 2018

**VIA ECF**

Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

       Re:   **Alvites Centeno et al v. DBD Contracting LLC.**
                2:17-cv-07121 (JFB)(GRB)

Dear Judge Bianco,

      As Your Honor is aware, this office represents plaintiffs Jose Alvites Centeno, Julio Gerardo Hernandez, Carlos Mizhquiri, Jorge Morante, Carlos Soria, Jesus Soria, Jose Soria, Michael Soria, Roberto Soria, and Walter Suarez-Vasquez ("Plaintiffs") in the above-referenced matter. The parties have reached a settlement each deems to be fair and reasonable, as set forth more fully below. Because the complaint asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), we write jointly with Defendants to request that Your Honor approve the proposed settlement agreement (the "Proposed Settlement Agreement") and "so-order" the Stipulation of Dismissal attached thereto.

      This case commenced with the filing of the complaint on December 6, 2017, and Defendants joined the action by filing an answer on April 16, 2018. The complaint alleges claims by Plaintiffs, on behalf of themselves and those similarly situated, under the FLSA and New York Labor Law ("NYLL"). The FLSA claims allege failure to pay overtime and the applicable minimum wage, and Plaintiffs also assert comparable claims under New York Labor Law, as well as additional NYLL claims for failure to provide proper wage statements and wage notices. In addition, Plaintiffs Centeno, Hernandez, and Morante also asserted claims in connection with their allegedly wrongful terminations, as set forth in the complaint.

      Defendants have throughout this litigation consistently denied that Plaintiffs are owed any wages whatsoever (and, in fact, Defendants asserted that certain of the Plaintiff were actually overpaid) and further denied that they committed any retaliatory or other unlawful act.

On May 22, 2018, the parties appeared for an initial conference before Magistrate Judge Gary R. Brown (copied on this correspondence), and the parties mutually agreed to attempt to resolve the matter through mediation. Subsequently, after exchanging substantial amounts of payroll records and other documents, on August 8, 2018, the parties attended a full day of mediation through JAMS, and continued their negotiations beyond the eight hours originally allocated to the session. These extended efforts ultimately resulted in an agreement in principle and, after extensive settlement discussions, the parties have agreed to a negotiated settlement in the form of the Proposed Settlement Agreement.

While the settlement amounts set forth in the Proposed Settlement Agreement are less than what the Plaintiffs would be entitled to if they each prevailed at trial to the fullest extent of their respective allegations, it exceeds what they would recover if Defendants were to prevail. Given the sharply disputed factual and legal issues, as discussed more fully below, the arms-length settlement is fair and reasonable to the parties.

It is respectfully requested that the requisite fairness finding be made in this matter.

1. **Additional Background**

Plaintiffs brought this suit alleging violations of the FLSA and NYLL. Specifically, Plaintiffs were employed as painters and spacklers who performed manual labor in residential apartment units. Defendants DBD Contracting LLC, and its owner, Mark Stavin, operated a business out of Freeport, New York, that performed these services on behalf of landlords located on Long Island.

Plaintiffs' individual dates of employment varied but generally ranged between the years of 2011 through 2017. Plaintiffs alleged that they worked significant overtime for which they were not paid at the proper overtime rate (*i.e.,* time and a half their regular rate of pay), and that instead, Defendants operated using a "ticketing" system where they were paid for working a fixed number of hours tied to the size of the apartments assigned to them (e.g. 7 hours for a one bedroom, 14 hours for a two bedroom, etc.) without regard to how many hours they actually worked. Plaintiffs also alleged that Defendants utilized a system where overtime hours (as calculated based on the ticketing system) were "banked" and then paid out as hours paid at straight time, either in: (i) a later pay period when Plaintiffs worked fewer than forty (40) hours in a week; or (ii) when the overtime accumulated to reach forty hours, at which time Defendants would allegedly issue an additional payroll check for the forty hours, paid at a straight time rate. Defendants denied the allegations of the Complaint and asserted affirmative defenses.

There was a significant factual dispute as to whether Plaintiffs worked overtime *whatsoever*, and if so, how many hours of overtime were actually worked. Plaintiffs' position was that they typically worked fifteen (15) hours of overtime each week. This led to a calculation of not only overtime, but also the need for an adjustment to the minimum wage paid. Defendants contend that the payroll records they have provided are sufficient to establish that Plaintiffs were paid for all overtime and that, because of the ticketing system, Plaintiffs were frequently *overpaid* because the ticketing system credited Plaintiffs with more hours than they actually needed to complete their work, and thus paid them for more hours than the number that they actually worked. Plaintiffs dispute that Defendants' payroll records are accurate or that the ticketing system credited

2

them with more hours than they actually worked. Therefore, the parties' positions as to the success of Plaintiffs' claims as well as the attendant damage calculations vary dramatically.

### 2. Settlement Terms

Both Plaintiff and Defendants provided the mediator with confidential communications setting forth their positions prior to mediation. In preparing those submissions, Plaintiffs calculated their damages based upon Plaintiffs' alleged average weekly overtime (which varied from Plaintiff to Plaintiff but ranged between 10 and 20 hours per week) inclusive of: (i) claimed damages; (ii) an additional 50% amount for liquidated damages; and (iii) NYLL (Wage Theft Prevention Act) penalties. Plaintiffs' calculated that their unpaid wages (without regard to any liquidated damages) was **$230,353.38**. Based on Defendant's payroll records, they have calculated Plaintiffs' worst case scenario as substantially less (*i.e.*, zero). Based upon recommendation of the JAMS mediator, the lengthy (multi-month) settlement discussions, and weighing the potential for overcoming Defendants' payroll records, as well as issues regarding collectability, the parties have agreed to settle this action for the total sum of **$249,999.97**.

While the FLSA imposes the obligation to pay unpaid overtime compensation and an additional equal amount as liquidated damages on employers who violate its requirement that overtime wages be paid, courts may enter judgments even without full payment, when there is a bona fide dispute over the number of hours worked. *Archer v. TNT USA, Inc.*, 12 F. Supp 3d, 373, 385-386 (E.D.N.Y., 2014). As Your Honor is aware, there is certainly a *bona fide* dispute in this action as to the number of hours worked by the Plaintiffs, and the accuracy of the Defendants' payroll records. Thus, while the proposed settlement amount is less than the full amount of Plaintiffs' recovery if Plaintiffs were to successfully prosecute their claims to the fullest, the settlement is nonetheless reasonable because of the risk to the Plaintiffs that they may not prevail on some or all of their claims or be able to fully collect any judgment. If Defendants were ultimately successful on the issues in dispute, Plaintiffs' damages would be eliminated or substantially less than the settlement.

In sum, the *bona fide* factual and legal issues in this litigation present major risks to both the Plaintiffs and the Defendants in continuing this action, and the settlement amount reflects a reasonable and arms-length resolution of Plaintiffs' claims after multiple months of settlement negotiations and a JAMS mediation.

### 3. Plaintiffs' Attorneys' Fees are Fair and Reasonable[1]

Under the terms of Plaintiffs' retainer agreement with counsel and under the Proposed Settlement Agreement, Plaintiffs' counsel will receive $82,835.78 from the settlement fund as attorneys' fees (approximately 33.13% of the total settlement amount), plus expenses of $1,510.22, which represents costs actually incurred by counsel in litigating this action (including filing and service of process fees), for a total of $84,346.71.

The amount of attorneys' fees was determined by multiplying each individual Plaintiff's percentage interest in the settlement pool (which was proportional to their relative share of the

---

[1] Defendants take no position with respect to whether or not Plaintiffs' attorneys' requested fees are reasonable.

3

total damages, as alleged, rounded down to two decimal places) by the negotiated Settlement Amount (after deducting the expenses), and setting aside attorneys' fees equal to thirty-three and one-third (33 and 1/3%) of the total.

This was an exceptionally difficult case to resolve, because Defendants – who retained experience wage and hour counsel – were able to produce payroll records covering the entire period at issue for each Plaintiff, and because those records were susceptible to competing interpretations that could have, for example, resulted in no liability. Nevertheless, through exceptional diligence, Counsel was able to successfully reach a negotiated outcome through mediation instead of consuming scarce judicial resources through protracted litigation. Accordingly, the amount of attorney's fees provided to Plaintiffs' counsel under the settlement is fair and reasonable, reflects the diligent efforts of Plaintiffs' counsel, and is well within the range of fees typically awarded in cases in this Circuit. Counsel's lodestar as of the filing of this letter is $45,740.54, making the fees that counsel will receive under the agreement less than double of the amount of their lodestar. In addition, the costs and fees requested are in accordance with the Plaintiffs' engagement agreements with counsel. Therefore, Plaintiffs and their counsel have already agreed to the fee provided for in the settlement.

Given Plaintiffs' counsel's experience in representing plaintiffs in cases such as this one, Plaintiffs' counsel was able to obtain an excellent result in a relatively expeditious and efficient manner. Counsel in this case expended significant time poring over Defendants' pay records, Plaintiffs' pay stubs, ticketing records, and negotiating the settlement throughout extensive arms' length discussions with Defendants. Accordingly, the time spent by Plaintiffs' counsel on this case was reasonable. If the Court thinks it would be beneficial, Plaintiffs' counsel would be pleased to provide additional information for the Court's consideration, including the Firm's Resume, Biographical information concerning the Firm's personnel, and information concerning the Firm's hourly rates and time entries.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and Plaintiffs have agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

**4. Conclusion**

In full consideration of all the issues, we believe that the parties' proposed agreement is fair and reasonable, and that the settlement should be approved. A copy of the parties' Proposed Settlement Agreement is submitted herewith.

Thus, the parties jointly, respectfully request that Your Honor determine the settlement to be fair and reasonable in light of all of the risks inherent in litigation and based on the facts in this case in particular.

      Upon the Court's approval of the Proposed Settlement Agreement, the parties respectfully request that Your Honor "so-order" the Stipulation of Dismissal with Prejudice attached thereto.

      Respectfully submitted,

      */s/ Matthew L. Berman*
      Matthew L. Berman, Esq.

cc:    Hon. Gary R. Brown, U.S.M.J
       Jason Klimpl, Esq. (Counsel for Defendants)